## A. P. VOITSBERG, Respondent, v. WHITE RIVER CONSTRUCTION COMPANY, Appellant.

Springfield Court of Appeals, November 14, 1914.

1. **EVIDENCE: Personal Injuries: Review of Evidence.** Action for personal injuries received while helping to unload a steel tower from a railroad car.   Evidence reviewed and examined and conflicts therein noted.

2. **APPELLATE PRACTICE: Evidence in Conflict: Verdict Not Disturbed, When.**  The verdict of a jury will not be disturbed where the evidence is squarely conflicting, unless against physi-

cal facts, no passion or prejudice or misconduct of the jury being shown.

3. **MASTER AND SERVANT: Personal Injuries: Physical Facts: Evidence: Comparison of.** Action by servant against master on account of personal injuries received while helping to unload a steel tower from a railroad car. Evidence reviewed and examined as to contention of appellant that plaintiff's evidence was in conflict with the physical facts. *Held,* that such contention is not sustained.

4. **APPELLATE PRACTICE: Instructions: Assumptions in: Harmless Error.** Action by servant against master for personal injuries. An instruction presenting plaintiff's theory, if erroneous in assuming certain facts, was not prejudicial, where defendant did not controvert such facts, if plaintiff's theory of the case were true.

Appeal from Greene County Circuit Court.—*Hon. Guy D. Kirby,* Judge.

AFFIRMED.

*John T. Craig, Samp Jennings, John P. McCammon* for appellant.

The giving of the first instruction at the request of the plaintiff was error for the reason that it assumed that plaintiff was not "in the clear" nor "out of the pathway of the steel tower down the incline" where he was at work when the order was given to let the tower go. Lukamiski v. Foundries, 162 Mo. App. 631; Glaser v. Rothschild, 221 Mo. 180; Bair v. Heibel, 103 Mo. App. 621; Rutledge v. Swinney et al., 156 S. W. 478; Warrington v. Bird, 151 S. W. 754; Fullerton v. Fordyce, 121 Mo. 13; Linn v. Bridge Co., 78 Mo. App. 111; Barr v. Armstrong, 56 Mo. 589; Caldwell v. Stevens, 57 Mo. 595; Carpenter v. Gruendler Mach. Co., 141 S. W. 1147; Bratton v. Potter, 132 S. W. 47; Stone v. Hunt, 94 Mo. 475. Plaintiff's statement as to the manner he received his injury is contradicted by the physical facts as detailed by him and his physician, and the judgment should be reversed. Scroggins v. Rail-

road, 120 S. W. 731; Daniels v. Railroad, 164 S. W. 154; Nugent v. Milling Co., 131 Mo. 241; Demaet v. Moving Co., 121 Mo. App. 92.

*George Pepperdine, Patterson & Patterson* for respondent.

There is not a contention made by appellant in this appeal that is fairly debatable, and for that reason the court should give the appellant the full benefit of section 2084, Revised Statutes of Missouri, which provides for penalizing vexatious appeals like this.

FARRINGTON, J.—The plaintiff recovered a judgment for seven thousand dollars on account of personal injuries suffered, charged to the negligence of the defendant's foreman in control of certain work in ordering a heavy steel tower to be thrown down from a railroad car without giving the plaintiff warning, though such foreman knew, or by the exercise of ordinary care could have known, that plaintiff was in a place of danger, where he had been sent, it is alleged, by the foreman, to unloose one end of a tower.

Certain facts are not controverted. Defendant owned and was having unloaded the steel towers from a flat car. The plaintiff was in the employ of the defendant, and was for several hours previous to his injury loosening some of the bolts, wires and angle bars which were around and through the load of towers to hold them fast on the car while en route from Syracuse, New York, to Springfield, Missouri, the place where the injury occurred. There were present when the unloading commenced, Strom, the defendant's superintendent of construction work, Bennett, the defendant's foreman, and some seven or eight other employees assisting in unloading the car. Plaintiff was also at the scene. (As to whether he had any duties to perform in actually letting down the towers to the ground is in

controversy.) He was struck by the first tower that was let down and severely injured; no point is made here that the verdict is excessive. The weight of these steel towers was variously estimated; according to some of defendant's witnesses each was twelve hundred pounds in weight (this was their lowest estimate); according to plaintiff, each one weighed from two thousand to three thousand pounds, were two and one-half feet in width, nine inches thick, and some forty-five to fifty-five feet in length. They were loaded on a flat car forty feet in length and nine feet in width. In loading, three towers had been placed side by side on the floor of the car, and the others were piled in the same order on top. The last two towers loaded were placed in the middle of the car and were fastened so as to hold them there. All agree that all rows of towers, except the top row, consisted of three towers laid side by side. All the towers were over forty feet long (the length of the car), and the two on top, one of which hit plaintiff, were somewhere close to fifty feet long, so that all of them extended over the end of the flat car on which they were loaded. To prevent them from bumping into box cars in the train there was placed at one end another flat car and at the other a gondola or coal car with the end thrown down on the floor. The ends of these towers projected over the car preceding and the one following the flat car. Fastened in the brackets along the sides of the loaded car were some wooden standards which all agree were about four feet in height; and all agree that the floor of the car was about four feet from the ground. To let the towers down to the ground there was provided two heavy wooden beams or skids the bottom ends of which were sunk in the ground a few inches, and the top ends were laid against the row of towers next to the top row and against the standard in the car at an angle of forty-five degrees. The men in unloading were to roll

the towers over and let them slide down the skids to
the ground. The injury occurred at about two o'clock
in the afternoon.

The facts in controversy between the parties are
concerning the weight and number of the towers, and
the height to which they were piled on the car, and
as to whether the plaintiff was sent in by the defend-
ant's foreman to loosen one end of the first tower to
be unloaded at a time when it was being unloaded.

Plaintiff accounts for the injury in this way: He
testified that he had been working all morning at the
car loosening the bolts, rods, wires and angle bars so
that it could be unloaded; that he estimated the towers
to weigh about three thousand pounds each; that he
saw that this car's capacity was about thirty-two thou-
sand pounds, and in this way estimated that there were
abo--- eleven towers on the car; that the two towers on
top did not quite come up to the top of the four foot
standards which were in the brackets on the sides of
the car; that the two towers on top were about eight or
eight and one-half feet from the ground, and that the
skids were put against the row of towers next beneath
the two on top; that this would make the upper end
of the skids seven to seven feet nine inches from the
ground; that the first tower was rolled over by the
workmen against the top of the standard, where the
small (or west) end of the tower hung or become fas-
tened in some way; that he was standing on the ground
near Strom, the superintendent, and was told by him
to take a three-foot timber and pry the west end loose
so that when the east end was thrown over by the
workmen the tower would slide down the skid; that
while he was there getting the west end up and on top
of the standard, and just as he did so and was taking
out the timber, the foreman gave the order to the
men on the east end to throw it down, which they did;
that the tower then came down the skids "like light-
ning," and struck him on the breast and hurled him

back to the ground, and that the tower came to rest on his legs, breaking both, one in three places, and injuring him in other particulars unnecessary to detail. He is corroborated by one witness (Foster) as to his estimate of the height of the load. This witness was not there when the accident occurred but did see the car before it was unloaded; but he corroborates the defendant's witnesses as to the number of towers on the car.

The defendant's witnesses, some four or five, account for the injury in about this way: That the towers, forty in number, were piled on the flat car to a height of about thirteen feet from the ground; that the skids were placed as plaintiff described, but these witnesses estimated the length of the skids at seventeen or eighteen feet, and stated that they set out about twelve feet from the car, leaning at an angle of about forty-five degrees; that the east end (the heavy end) of the tower being unloaded, had been let down on the skid and had slipped down some four or five feet; that the west end, where plaintiff was hurt, hung on the top of the standard or on the tower on which it lay, and that it was kicked or shoved loose by one of the workmen named Smith, and that it then went down the skid; that when the tower was kicked loose, the plaintiff was standing four or five feet back of and away from Strom who was near the foot of the skid, and that for some unknown reason the plaintiff "ran," "rushed," "walked" right into or upon the skid and into the sliding tower—one witness saying that he ran up the skid and in that way received his injury. It is also sworn to by some of defendant's witnesses that while plaintiff was in the hospital he said to them in talking about how he was hurt that he "must have been crazy."

Appellant contends that the plaintiff's account of the injury is against the physical facts as detailed by him and as shown by his injury, and against the testi-

mony of every other witness, and against his admission in the hospital; also, that the place was only temporarily dangerous; and finally, that there was error in the first instruction.

It can readily be seen from the foregoing statement that the two main points on which there is a difference is as to whether the plaintiff was ordered in to loosen the west end of the tower and as to what was the height of the car of towers, on both of which there is a square conflict in the evidence. Hence, the verdict of the jury will not be disturbed unless against the physical facts—no passion or prejudice or misconduct on the part of the jury being shown.

Appellant contends that, admitting the car to have been loaded to a height of only eight feet and that plaintiff was where he says he was, he was in a safe place and could not have been hurt. To this we cannot agree. If the top of the tower was eight feet from the ground, the top of the skid on which it was supposed to drop being placed against the tower next to the top could not have been higher than seven feet three inches, because the top one was nine inches thick. If placed against the middle or bottom of the second row from the top, the upper end of the skid would then have been somewhere near seven feet from the ground. If plaintiff went there with a timber three feet long and was prying up the west end of the tower over the standard, he would necessarily be out a few feet from the car, for in order to have had any leverage at all he must necessarily have stood two or three feet away from the side of the car. Appellant lays great stress upon plaintiff's statement that he was standing "close in," "beside the standard." These terms, as will be seen, were purely relative, and speaking from a place that would be back from the skids in safety he could readily say that he was "close in," "beside the standard," and not be held to have placed himself right up against the car—touching it. All the

witnesses agree that the skids sloped down at an angle of about forty-five degrees, and if the workmen started the tower at about seven feet from the ground it is apparent that a man who was six feet one inch in height, as was the plaintiff, would be hit at about the breast, where he said he was first struck, if he was standing within two or three feet of the car and in the path that the tower would follow on the skid in sliding down. Plaintiff testified that he put the timber or stick in the space between the towers to lift the tower in question up; and as to this physical fact he is corroborated because defendant's witness Strom testified there was a space between the towers as they lay on the car. Neither does the physical fact that the tower when it came to rest lay on plaintiff's legs necessarily contradict the plaintiff's account of the occurrence. He estimates the weight of these towers at three thousand pounds, while some of defendant's witnesses estimated them to weigh two thousand pounds each, others, fifteen hundred pounds each, and still others, twelve hundred pounds each. Even one weighing twelve hundred pounds coming down a skid at an angle of forty-five degrees and striking a man on the breast would have a tendency to hurl him back just at the place plaintiff says he struck the ground.

The jury evidently did not believe that the plaintiff was "crazy" and voluntarily ran into the descending tower, as defendant's witnesses testified he admitted while in the hospital. The jury had to decide whether, according to plaintiff's theory, he was sent in to loosen the tower and while there the order was given to throw it over, or whether, according to defendant's theory, he was crazy or acted the part of a crazy man in leaving a perfectly safe place and running into the falling tower with which he, as defendant claims, had no duty whatever to perform.

In coming to their conclusion the jury probably realized that men do not voluntarily rush into obvi-

ously dangerous places without some rational cause; and they might also have realized, as we do, that there were contradictions in defendant's evidence as to the position of the east end and as to the position of the west end of the tower. The record also discloses inconsistent statements by defendant's witnesses as to how plaintiff voluntarily went into this trap. Of course, if defendant's witnesses were to be believed when they said that this top tower was thirteen feet from the ground, as that would disclose a physical fact, this would make it impossible for plaintiff to have been struck while standing where he says he stood as the tower in sliding down the skids would have passed above his head; but it was not a physical impossibility if the top of the skid was only seven or seven and one-half feet from the ground as testified to by the plaintiff, as to which he was corroborated by his witness Foster who testified that the top of the load was not over eight or eight and one-half feet from the ground.

Appellant also contends that the place plaintiff says he was sent to was temporarily dangerous; that, according to his story, as soon as he would loosen the west end it necessarily would come down of its own weight. But here again the defendant falls into error by assuming that its testimony was true that the east end had already been thrown over the east standard and was resting or hanging on this skid some three or four feet down it. If the plaintiff's version as to where the east end of the tower was is true— and the jury believed it—then it required, before it could come down after being loosened, that the men on the east end throw that end over on the skid.

The court gave all the instructions asked by the defendant, except two, and they were adequately covered by other instructions given by the court, and no error is now claimed in the action of the court as to the two refused.

There was no instruction in the nature of a demurrer to the evidence offered by the defendant. There was sufficient evidence, as herein shown, to submit the issues to the jury.

The instructions submitted two theories, one as detailed by the plaintiff, that he was at the place where he was hurt by reason of an order of the defendant's foreman, and that the foreman negligently ordered the tower thrown over on him; the other theory was that presented by the defendant, that plaintiff for some unknown reason voluntarily rushed into this trap and was injured. Proper instructions submitted both theories and the plaintiff's version prevailed.

Appellant does complain of instruction numbered one given on behalf of the plaintiff, because, appellant says, it assumes that plaintiff was not in the clear or not out of the pathway of the tower sliding down the incline where he was at work when the order was given to let the tower go, and assumed that the place where plaintiff says he stood was dangerous, citing Lukamiski v. Foundries, 162 Mo. App. 631, 142 S. W. 1093; and Glaser v. Rothschild, 221 Mo. 180, 120 S. W. 1. That part of the instruction singled out by appellant as containing the error is as follows:

"   . . . And if the jury believe and find that it was plaintiff's duty to pry up the end of one of the said steel towers and rest the same upon a heavy wooden stake on the side of the car so that other employees at the other end of the said steel tower could lift the said tower over the heavy wooden stake at that end of the car and cause the same to slide down the said incline from the car to the ground and that plaintiff in compliance with his said duty had pried one end of the said steel tower on top of the said stake and before plaintiff had gotten in the clear and out of the pathway of said steel tower down said incline, the defendant's foreman carelessly and negligently ordered the defendant's employees working at the

other end of the said tower to start the said tower·
down the said wooden beams or incline without giving
plaintiff warning when the .defendant knew or by the
exercise of ordinary care could have known that the
plaintiff was not in the clear and by reason thereof
said tower caught and injured him while plaintiff
was in the exercise of such care as a reasonably pru-
dent man would have exercised in the same or like
circumstances, then they will find the issues for the
plaintiff. . . . ''

In reading this instruction it must be borne in
mind that there were two well-defined theories devel-
oped as to how this injury occurred, one developed by
the plaintiff and the other by the defendant. There
was no attempt at the trial to show that the place
where plaintiff says he stood by the skids, placed at
about seven or seven and one-half feet above the
ground, was a safe place, because the tower would
pass over his head in its descent; in other words, de-
fendant at no time contended that plaintiff moved
from a safe place next to the car into a dangerous
place, defendant's theory and all its evidence going
to show that he was away out beyond the ends of the
skids and rushed forward toward the car and met
the descending tower. The plaintiff's evidence is not
subject to the construction placed on it by the defend-
ant that he was in a safe place and not in a dangerous
place, with the skids seven to seven and one-half feet
high, because of the fact that he swore that he was
"close in," "beside the standard." It must be re-
membered that he at the same time testified that he
was prying the tower with a timber some three or
four feet long which he was using as a lever, and this
work would necessarily place him, not right up against
the car, yet "close in" to the car. There being no
evidence whatever that if there, he was in anything but
a dangerous place, the court committed no error in

185MoApp9

having the jury pass on whether standing where plaintiff says he was, he was in a dangerous place. The most that can be urged against this instruction is that it presents plaintiff's theory while not at the same time presenting that of the defendant. However, defendant's instructions numbered four and six were given by the court and clearly presented defendant's side of the issue. We hold, therefore, that the error, if any, was nonprejudicial as the jury could not under the circumstances have been misled by instruction numbered one.

The judgment is affirmed. *Robertson, P. J.*, and *Sturgis, J.*, concur.